UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIANN KRECA, individually and as Successor in Interest to THE ESTATE OF MICHAEL E. KRECA *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ELMER EDWARDS *et al.*,<br><br>Defendants. | Civil No. 06cv1789-L(AJB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

This civil rights action pursuant to 42 U.S.C. § 1983 arises out of an incident between two San Diego Police officers and Michael E. Kreca, which culminated in Officer Elmer Edwards shooting Mr. Kreca in the chest at close range, killing him almost instantly. Mr. Kreca's parents brought the instant action for violation of constitutional rights and wrongful death against San Diego Police Officers Elmer Edwards and Samantha Fleming, San Diego Police Chief William Lansdowne and the City of San Diego.

Defendants moved for summary judgment, which Plaintiffs opposed. Defendants argue that (1) they are shielded by qualified immunity because they did not violate Mr. Kreca's civil rights; (2) to the extent Plaintiffs alleged claims for Fifth and Fourteenth Amendment violations, the claims are legally insufficient and unsupported by evidence; (3) Plaintiffs do not have any evidence to support their section 1983 claim against the City; and (4) Plaintiffs can not sue the City for tort liability under state law.

1       Although Plaintiffs opposed the motion, they stipulated to dismissal without prejudice of
2 the claims against Chief Lansdowne, and section 1983 claim against the City. (Joint Statement
3 of Undisputed Facts and Resolved Legal Issues, field Aug. 28, 2007 ("Joint Statement"), at 1-2.)
4 In their opposition, Plaintiffs did not address Defendants' arguments regarding the legal
5 insufficiency of the Fifth and Fourteenth Amendment claims. Accordingly, to the extent
6 Plaintiffs intended to assert these claims, Defendants' motion is granted as unopposed as to these
7 claims. *See* Civ. Loc. R. 7.1(f)(3). Based on the foregoing, the issues remaining for decision on
8 Defendants' summary judgment motion are the alleged violation of Mr. Kreca's Fourth
9 Amendment rights and the viability of state law tort claims.

10       Rule 56 of Federal Rules of Civil Procedure governs the parties' burdens on summary
11 judgment. Rule 56(c) empowers the court to enter summary judgment on factually unsupported
12 claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every
13 action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is
14 appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits
15 show that there is no genuine issue as to any material fact and that the moving party is entitled to
16 judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Arpin v. Santa Clara Valley*
17 *Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When a defendant moves for summary
18 adjudication of plaintiff's claims, as is the case here, the moving party can meet its burden by
19 pointing out the absence of evidence from the nonmoving party. *See Celotex*, 477 U.S. at 325;
20 *see also Garneau v. City of Seattle*, 147 F.3d 802, 807 (9th Cir. 1998). If the movant meets his
21 burden, the burden shifts to the nonmovant to show summary adjudication is not appropriate.
22 *Celotex*, 477 U.S. at 317, 324. The nonmovant must go beyond the pleadings to designate
23 specific facts showing there are genuine factual issues which "can be resolved only by a finder
24 of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty*
25 *Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering the motion, the nonmovant's evidence is
26 to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255.

27       This is not the usual case where each side describes the incident differently, because Mr.
28 Kreca is deceased and because the parties do not dispute much of what occurred. (*See* Joint

Statement at 2-6.)  It is undisputed that the officers were patrolling a commercial area near the intersection of Mesa Ridge Court and Camino Santa Fe in San Diego on a Saturday morning, and that the area was generally unpopulated.  The officers heard shots in the nearby canyon, but could not tell where in the canyon the shots came from.  Officer Edwards saw what he believed to be a person standing in the shadow under the bridge where Camino Santa Fe crosses the canyon.  He could not discern the clothing, race, height, weight or gender of the person.  When Officer Fleming looked, she did not see the person.  The officers then drove toward the bridge.  On Camino Santa Fe they saw a pedestrian walking away from the bridge. Officer Edwards did not recognize the pedestrian as the person he thought he had seen under the bridge.  Officer Edwards also saw a car driving away from the bridge.  When they were looking down into the street earlier from the commercial area, the officers did not see any pedestrians or cars.  The officers made no attempt to stop the car, but decided to stop the pedestrian, Mr. Kreca.

Officer Fleming approached Mr. Kreca and asked him about the shots in the area.  Mr. Kreca responded he heard the shots but he was not the shooter.  Although Officer Fleming did not observe any indication that Mr. Kreca was armed, she told him she would pat him down for weapons and tried to position his hands behind his back.  Mr. Kreca resisted the attempt to control his hands.  While trying to get a hold of both of Mr. Kreca's hands behind his back, Officer Fleming patted down the waistband of his pants and felt what she believed was the butt of a pistol.  Officer Fleming then told Mr. Kreca she would handcuff him.  He told her he wanted to go home and tried to break from Officer Fleming's grasp.  Officer Fleming alerted Officer Edwards that she believed Mr. Kreca was armed.  A physical altercation involving both officers ensued.  While Officer Fleming continued to attempt to control Mr. Kreca's right arm, Officer Edwards, with his gun pulled, attempted to control Mr. Kreca's left arm and simultaneously pull Mr. Kreca's gun from his waistband.  Mr. Kreca resisted, and Officer Edwards shot him.

Plaintiffs claim the officers violated Mr. Kreca's Fourth Amendment rights.  Defendants maintain they did not and that they are protected by qualified immunity.  In resolving questions of qualified immunity, courts are required to resolve a

> threshold question:  Taken in the light most favorable to the party asserting the

> injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. If, and only if, the court finds a violation of a constitutional right, the next, sequential step is to ask whether the right was clearly established in light of the specific context of the case.

*Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007) (internal quotation marks, ellipsis and citations omitted).

The court first turns to the inquiry whether the officers' conduct violated Mr. Kreca's Fourth Amendment rights.

> Stops under the Fourth Amendment fall into three categories. First, police may stop a citizen for questioning at any time, so long as that citizen recognizes that he or she is free to leave. Such brief, "consensual" exchanges need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures. Second, the police may 'seize' citizens for brief, investigatory stops. This class of stops is not consensual, and such stops must be supported by "reasonable suspicion." Finally, police stops may be full-scale arrests. These stops, of course, are seizures, and must be supported by probable cause.

*Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir. 1993) (internal citations omitted). Although "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," the force must be "objectively reasonable in light of the facts and circumstances." *Graham v. Connor*, 490 U.S. 386, 396, 397 (1989). Plaintiffs argue Defendants violated Mr. Kreca's Fourth Amendment rights because they did not have reasonable suspicion for an investigatory stop and because they used unreasonable force to subdue him.

Officer Fleming initially involved Mr. Kreca in a consensual exchange in which Mr. Kreca voluntarily cooperated. She asked Mr. Kreca if he had heard the shots and if he had been shooting. (Fleming Dep. at 25, Fleming Decl. ¶ 14.) He said he had heard the shots and that he had not been shooting. (*Id.*)

Officer Fleming then decided to pat down Mr. Kreca for weapons. "A person is 'seized' only when by means of physical force or a show of authority, his freedom of movement is restrained." *Morgan*, 997 F.2d at 1253, quoting *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980). Officer Fleming did not obtain Mr. Kreca's consent for the pat down and attempted to restrain his hands behind his back to conduct the pat down (Joint Statement at 4). She

testified Mr. Kreca was not free to leave when she started patting him down. (Fleming Dep. at 29.) Therefore, this was a seizure under the Fourth Amendment. Plaintiffs argue the officers did not act with the requisite reasonable suspicion when they seized Mr. Kreca. (Opp'n at 8.)

A fact is material if it could affect the outcome of the suit under the governing substantive law. *Anderson*, 477 U.S. at 248. Whether the officers detained Mr. Kreca with reasonable suspicion is therefore a material issue of fact. If there is a genuine dispute about a material fact, summary judgment can not be granted. *Anderson*, 477 U.S. at 250.

> Articulating precisely what "reasonable suspicion" . . . mean[s] is not possible. [It is a] commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. As such, the standard[ is] not readily or even usefully, reduced to a neat set of legal rules. We have described reasonable suspicion simply as a particularized and objective basis for suspecting the person stopped of criminal activity. . . . We have cautioned that [this] legal principle[ is] not [a] finely-tuned standard[], comparable to the standards of proof beyond a reasonable doubt or of proof by a preponderance of the evidence. [It is] instead [a] fluid concept[] that take[s its] substantive content from the particular contexts in which the standard[ is] being assessed. . . . [¶] The principal components of a determination of reasonable suspicion . . . will be the events that occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion . . . .

*Ornelas v. United States*, 517 U.S. 690, 696-97 (1996) (internal citations, quotation marks, brackets and ellipses omitted). In determining reasonable suspicion, the court "must look at the totality of the circumstances . . . to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks and citations omitted). "A stop may only be justified, however, by reference to factors that were present up to the time the stop was made." *United States v. Montero-Camargo*, 208 F.3d 1122, 1130 n.11 (9th Cir. 2000) (*en banc*); *see also Moreno*, 431 F.3d at 639.

In determining whether an officer had reasonable suspicion, "due weight must be given not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). However, the court

/ / / / /

> will defer to officers' inferences only when such inferences rationally explain how the objective circumstances "arouse[d] a reasonable suspicion that *the particular person being stopped* ha[d] committed or [was] about to commit a crime." "[W]hile an officer may evaluate the facts supporting reasonable suspicion in light of his experience, experience may not be used to give the officers unbridled discretion in making a stop." . . . Seemingly innocuous behavior does not justify an investigatory stop unless it is combined with other circumstances that tend cumulatively to indicate criminal activity.

*United States v. Manzo-Jurado*, 457 F.3d 928, 934-35 (9th Cir. 2006) (emphasis and brackets in original) quoting *Montero-Camargo*, 208 F.3d at 1129, 1131.

> While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.

*Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

When they heard shots in the canyon, the officers knew that firing a gun within city limits was a criminal act. (Joint Statement at 2.) The officers did not know in which part of the canyon the shots were fired. (*Id*. at 2.) Officer Edwards thought the shots could have come from any area of the canyon. (Edwards Dep. at 40-41.) He got out of the patrol car and looked. (Joint Statement at 2.) He focused on the area under the bridge because he thought he saw a person in the shadow there, but he could not tell any identifying characteristics of the person, including race, gender, age, height or clothing. (Edwards Dep. at 32; Joint Statement at 2.) Officer Fleming thought the shots came from the area directly south from where she was standing and not from the area under the bridge.[1] (Fleming Dep. at 24-25; Joint Statement at 3.) When Officer Edwards mentioned he saw a person, she looked, but did not see anything in the area under the bridge. (Fleming Dep. at 15; Joint Statement at 2.) She focused on the area under the bridge because Officer Edwards thought he saw a person there. (Joint Statement at 2-3; Fleming Dep. at 24.) Officer Edwards did not see where or in what direction the person under

---

[1] Officer Fleming's subsequent declaration contradicts her deposition testimony. (*Cf*. Fleming Dep. at 24-25 & Fleming Decl. ¶ 7.) After the declaration was filed, the parties agreed to a statement that Officer Fleming believed the shots came from a part of the canyon other than the bridge. (Joint Statement at 3.) Accordingly, the contradictory statement in the declaration will not be considered.

the bridge went. (*See* Edwards Dep. at 37.) He was aware that historically there were encampments in canyons, but was not sure about that particular canyon. (*Id*. at 41.)

The officers drove toward the bridge to investigate, during which time the area under the bridge was out of their sight for approximately two minutes. (Joint Statement at 3.) On their way to the bridge, the officers did not see anyone until they saw Mr. Kreca. (Edwards Dep. at 14.) When the officers saw Mr. Kreca, he was walking away from the bridge on the opposite side of the street than the officers. (Joint Statement at 3; Fleming Dep. at 22.) At approximately the same time, Officer Edwards saw a car driving away from the bridge. (Joint Statement at 3; Edwards Dep. at 38.) Officer Edwards believed the person he saw under the bridge could have been in the car, but decided not to investigate because he could not stop the car there due to a raised center island. (Edwards Dep. at 38.) When they were looking down into this area earlier, the officers had not seen anyone. (Joint Statement at 3.) Officer Edwards could not tell at any time during the encounter with Mr. Kreca whether he was the person he thought he had seen in the shadow under the bridge. (*Id*. at 4; Edwards Dep. at 42.) Mr. Kreca wore jeans and two button-down shirts, and did not appear to be armed. (Pls' Ex. 4; *see also* Joint Statement at 3.) Officer Edwards could not tell whether Mr. Kreca was concealing a weapon. (Edwards Decl. ¶ 13.)

The officers made a U-turn to contact Mr. Kreca. As they approached and drove past him, he looked at their patrol car. (Fleming Dep. at 23; Edwards Decl. ¶ 11.) When they drove back toward him, he stopped. (*Id*. at 25.) The officers stopped the car and Officer Fleming exited. Mr. Kreca approached her and answered her questions. (Joint Statement at 4.) Officer Fleming was three feet from Mr. Kreca and able to observe him. She saw nothing in Mr. Kreca's hands and did not see anything to lead her to believe he might be armed. (*Id*.; *see also* Fleming Dep. at 26-27.)[2]

---

[2] In her declaration, Officer Fleming also stated Mr. Kreca appeared nervous; however, she did not mention this in her deposition. (*Cf*. Fleming Decl. ¶ 14 ("He seemed nervous") & Fleming Dep. at 26-27.) Since Officer Fleming did not include this fact to explain why she thought she had acted with reasonable suspicion (*see* Fleming Dep. at 23), it will not be considered.

The officers' explanation for detaining Mr. Kreca was that he was in the area of the gunshots, they did not see anyone else in the area, and he looked at their patrol car as they were approaching. (Edwards Dep. at 16, 15; Fleming Dep. at 23.)

A dispute about a material fact such as the officers' reasonable suspicion is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A reasonable jury could conclude that the officers detained Mr. Kreca for a pat down based on a hunch rather than reasonable suspicion.

The officers did not know where in the canyon the shots came from and Officer Fleming did not see anyone anywhere in the canyon. Therefore, the jury could reject the officers' explanation for focusing their investigation on the bridge area.

Accepting, *arguendo*, the focus on the bridge area, nothing linked Mr. Kreca to the person in the shadow under the bridge other than his proximity to the bridge. Officer Edwards did not know where the person he might have seen went, and could not tell at any time if Mr. Kreca was the person he saw in the shadow. Although officers are not required to ignore the relevant characteristics of a location, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Wardlow*, 528 U.S. at 124. Furthermore, the officers' explanation that Mr. Kreca was the only person in the area is factually inaccurate, because Officer Edwards also saw a car coming from the same direction.

The officers ascribe great significance to the fact Mr. Kreca looked at them as they drove toward him, passed him, U-turned and approached him. It is not uncommon to look at an approaching police patrol car, and this fact has been ruled as not supporting reasonable suspicion. *See Morgan*, 997 F.2d at 1254; *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1446-47 (9th Cir. 1994); *Montero-Camargo*, 208 F.3d at 1136. Under the circumstances, a jury could find it more unusual if Mr. Kreca had not looked at the patrol car.

/ / / / /

/ / / / /

/ / / / /

Plaintiffs filed a declaration of their police procedures expert Jack Smith, a retired police chief.[3] (Singleton Decl. Ex. 5 & 6.) He opined that "[b]ased on the facts and circumstances confronting the officers, it would appear that the officers did not have reasonable suspicion to believe that Mr. Kreca had been involved in the misdemeanor crime of unlawfully firing a pistol within the city limits and were acting on a hunch." (*Id*. at 4.)

Based on the context established by the facts taken in their totality, a reasonable jury could find the officers decided to escalate the consensual verbal exchange with Mr. Kreca to a detention based on their inchoate and unparticularized suspicion rather than on an objective justification that Mr. Kreca was the shooter. Accordingly, a reasonable jury could conclude the officers did not act with reasonable suspicion.

The court next turns to the excessive force claim. "[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . .." *Graham*, 490 U.S. at 395. "Force is excessive when it is greater than reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002), citing *Graham*, 490 U.S. at 395. If the jury concludes the officers did not act with reasonable suspicion when they detained Mr. Kreca, there was no reason to use force to subdue him, and the considerable force Officers Fleming and Edwards used against him bears no reasonable relation to the circumstances or the need to apply it. *See Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001); *P.B. v. Koch*, 96 F.3d 1298, 1304 (9th Cir. 1996). Because there is a genuine issue of material fact whether the officers acted with reasonable suspicion when they detained Mr. Kreca,

/ / / / /

---

[3] Defendants objected to this evidence on the ground that the expert opinion "usurp[s] the role of the Court in determining whether there was reasonable suspicion . . .." (Defs' Objection at 2.) The objection is overruled because Federal Rule of Evidence 704 provides that an expert opinion "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."
Defendants cite to what they characterize as Federal Rule of Evidence 704.5. However, Federal Rules of Evidence do not contain this purported rule. The court also notes that when Plaintiffs' counsel questioned Officer Edwards at deposition about reasonable suspicion, Defense counsel, contrary to her position expressed in support of summary judgment, objected on the grounds that the question called for expert opinion. (Edwards Dep. at 17.)

there is also a genuine issue of material fact whether the force the officers used was reasonable under the circumstances.

Based on the foregoing, a reasonable jury could interpret the evidence to find that the officer's conduct violated Mr. Kreca's Fourth Amendment rights.  The court next considers the second part of the qualified immunity analysis – whether the Fourth Amendment rights were clearly established in light of the specific context of the case.  *Scott*, 127 S.Ct. at 1774.  As is evident from the legal analysis above, the Fourth Amendment law applicable to the circumstances of this case predates the incident, which occurred on February 11, 2006.  Accordingly, the constitutional rights were clearly established, and qualified immunity does not shield Officers Fleming and Edwards from trial.

Last, Defendants argue Plaintiffs cannot assert wrongful death and survivorship claims against the City under California law because the exclusive basis of public entity tort liability is statutory.  Because Plaintiffs complied with the requirements of the California Tort Claims Act, Cal. Gov't Code § 810 *et seq.*, Defendants' argument is rejected.

Section 815 "establishes sovereign immunity . . . except as provided in the Tort Claims Act or other statute." *McCauley v. City of San Diego*, 190 Cal. App. 3d 981, 991 (1987) (internal quotation marks and citations omitted); Cal. Gov't Code § 815.  California Government Code Section 815.2 provides in pertinent part that

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Defendants do not contend that Officers Fleming or Edwards acted outside the scope of employment when they stopped and subdued Mr. Kreca.  California Tort Claims Act provides a statutory framework to assert tort claims against public entities:

> no suit for money or damages may be brought against a public entity on a cause of action  for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board . . ..

Cal. Gov't Code § 945.4.  Tort claims are not excepted from the claim presentation requirement.

*Id*. § 905. The court takes judicial notice of the Claim Against the City of San Diego, which Plaintiffs filed with the City on May 30, 2006.  Because Plaintiffs complied with the claim presentation requirement of the California Tort Claims Act, Defendants' argument, that Plaintiffs' state law claims should be denied, is rejected.

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Plaintiffs' claim for civil rights violations against the City of San Diego under 42 U.S.C. § 1983 and all of Plaintiffs' claims against San Diego Police Chief William Lansdowne are **DISMISSED WITHOUT PREJUDICE** pursuant to the parties' stipulation.

2. Defendants' motion for summary judgment is **GRANTED** with respect to the civil rights claims asserted under the Fifth and Fourteenth Amendments.

3. In all other respects, Defendants' motion is **DENIED**.

**IT IS SO ORDERED**.

DATED: March 17, 2008

M. James Lorenz
United States District Court Judge

COPY TO:

HON. ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL